## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

CHRISTOPHER GRISHAM; JAMES
EVERARD,

        *Plaintiffs,*

v.

RENE VALENCIANO; J. LOPEZ;
HECTOR RUIZ; A. VIERA; CITY
OF OLMOS PARK,

        *Defendants.*

Case No. 5:20-cv-00387

Hon.

---

Solomon M. Radner
Michigan Bar No. P73653
*Attorney for Plaintiffs*
26700 Lahser Road, Suite 401
Southfield, Michigan 48033
(866) 939-2656
sradner@excololaw.com

---

## **COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs, CHRISTOPHER GRISHAM and JAMES EVERARD, by and through their attorneys, EXCOLO LAW, PLLC, complaining of Defendants, respectfully allege as follows:

## **JURISDICTION AND VENUE**

1.      This is a civil rights action in which Plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. § 1983, the First, Second, Fourth, and Fourteenth Amendments of the United States Constitution.

1

2.     Jurisdiction of this Court is found upon 28 U.S.C. § 1331 since this action arises under the Constitution and the laws of the United States.

3.     Venue is proper in the United States District Court for the Western District of Texas because the majority of events complained of occurred in this district.

4.     Pursuant to 42 U.S.C. § 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against all of the Defendants in their individual capacity, for the violations of Plaintiffs Constitutional rights and harm caused by their actions/inactions.

## PARTIES

5.     Plaintiff, CHRISTOPHER GRISHAM, ("Plaintiff" or "Mr. Grisham"), is a law-abiding citizen of the State of Texas.

6.     Plaintiff, JAMES EVERARD, ("Plaintiff" or "Mr. Everard"), is a law-abiding citizen of the State of Texas.

7.     Upon information and belief, all defendants are Texas residents and are being sued in their individual, supervisory, and/or Official capacities as permitted by law.

8.     Defendant, RENE VALENCIANO, (herein after Defendant Valenciano or Defendant police chief Valenciano) was a Texas resident at all times relevant to this complaint and acted as a direct supervisor to City of Olmos Police Department employees as the Chief of police. He is being sued in his individual, supervisory, and official capacity.

9.     Defendant, OFFICER J. LOPEZ, was a Texas resident at all times relevant to this complaint and acted as an Olmos Police Officer. He is being sued in his individual capacity.

10.     Defendant, HECTOR RUIZ, was a Texas resident at all times relevant to this complaint and acted as an Olmos Police Officer. He is being sued in his individual capacity.

11.     Defendant. A. VIERA was a Texas resident at all times relevant to this complaint and acted as an Olmos Police Officer. He is being sued in his individual capacity.

12.     Defendant, CITY OF OLMOS PARK, is a municipality in the State of Texas.

## FACTUAL ALLEGATIONS

13.     On March 26, 2018, Plaintiff Grisham called Olmos Park Police and asked whether he would be approached by police if he or others were open carrying their firearms. He was assured by Chief of Police Defendant Valenciano that Plaintiffs and others who were open carrying pursuant to Texas state law would not be approached by police officers.

14.     On March 27, 2018, Plaintiffs were walking on public sidewalk while open carrying. Plaintiff Grisham had a handgun strapped to his waist, and Plaintiff Everard had an unloaded rifle slung across his chest. Plaintiffs were both holding video cameras and recording the public view.

15.     Upon information and belief, a witness called 911 and explained that someone was carrying a gun. The witness further explained that the men carrying the guns did not seem dangerous; rather, they looked like they just wanted the attention. The 911 dispatcher said something to the effect of "those are the second amendment people."

16.     Prior to arriving on the scene, the Olmos Park officers were made aware the call was regarding "the second amendment people." Officers arrived, and Plaintiffs began recording the interaction with the officers.

3

17.     Defendant Officer Lopez began yelling at Plaintiff Everard stating, "lay on the ground and disarm yourself or we will fucking disarm you." At this point, Plaintiff Grisham moved to the corner where Plaintiff Everard was standing, and he continued to film the interaction with the officers from that angle. Several other citizens were recording this interaction as well. Several cars drove past the scene. At one point, a lady stopped to chat with Plaintiff Grisham, and a bicyclist casually strolled past the scene.  An image of the scene can be found below.



18.     Plaintiff Everard continued to ask the officers what crime he had committed. When asked to lay on the ground, he said he would comply if he was told why he was being detained.

19.     Then, Defendant Valenciano and Defendant Officer Viera approach Plaintiffs. At this point, Defendant Officer Viera begins reaching for Grisham. Here, Grisham placed his hands in the air and took several steps back. Defendant Valenciano,

without prior warning, shot Plaintiff Grisham with his taser while Defendant Viera shoved

Plaintiff in his chest.  An image of the scene can be found below.



20.     The tasing caused Plaintiff Grisham to fall backward onto the pavement and

smack his head on the pavement. Soon thereafter, it becomes apparent Plaintiff is bleeding

and seriously injured. Plaintiff Grisham suffered a concussion and a serious abrasion to the

back of his head.  An image of the scene can be found below.



21.     While Plaintiff Grisham is being assaulted by Defendant Valenciano and Defendant Viera, Plaintiff Everard is placed under arrest by Defendant Officer Ruiz.  Once Defendant Ruiz had Plaintiff Everard cuffed, he took Plaintiff Everard's camera and threw it into the street. Then, Defendant Officer Ruiz pushed Plaintiff Everard onto his knees. Once Plaintiff Everard was on his knees, Defendant Valenciano and Defendant Ruiz shoved Plaintiff Everard face first into the pavement for no lawful reason.  Images from the scene can be found below.




22.     Defendant Officers Lopez and Viera attempted to lift Plaintiff Grisham to his feet. Clearly disoriented and bleeding from the head, Plaintiff Grisham was unable to gain solid footing. In response, Defendant Officer Lopez and Defendant Officer Viera dragged Plaintiff by his arms and legs to the police car. Soon after EMS arrived and Defendant Valenciano waived them away, denying medical treatment for Plaintiff's serious injuries. An image of the scene can be found below.



23.    Valenciano had witnessed Plaintiff Grisham struggle to gain his footing, and saw that Plaintiff had to be dragged to the police vehicle. Nevertheless, he waived away EMS, who could have provided Plaintiff Grisham with the needed medical Care. Defendant Valenciano then directed Defendant Officers to take a longer route back to the police station in order to further delay Plaintiff Grisham's necessary medical treatment.

24.    Plaintiff Grisham suffered a serious abrasion to his head, a concussion, aggravated PTSD symptoms, and chronic migraines due to his injuries.

25.    Due to being thrown to the ground and face shoved into pavement, Plaintiff Everard suffered a fractured wrist and a serious shoulder injury. Thereafter, Plaintiff Everard underwent shoulder surgery to repair the damage caused by the unlawful arrest.

26.     When Defendant Valenciano removed Plaintiff Everard from the squad car, he used excessive force causing injury, ligament damage to Plaintiff's wrist and his hand. Valenciana used force on Everard once again when he asked about Plaintiff Grisham's injuries.

27.     After Defendants arrested Plaintiffs, Defendant Valenciano called over the radio that he has "squashed the rebels."

28.     Once Defendant Officers had Plaintiff's detained at the police station, they proceeded to destroy Plaintiffs' property. Specifically, the SD cards from the videocamera and GoPro and cellphones of both Plaintiffs were deleted.

29.     Moreover, officers made false statements that Everard's gun was loaded, that Mr. Everard's gun was equipped with armor piercing ammunition, a felony in Texas, and that Mr. Everard refused to display his identification. None of these statements are true. Mr. Everard had done nothing unlawful.

30.     While at the station, Plaintiff Everard was held at taser point and forced into leg shackles while being called derogatory names such as "retard" by Defendant Officers.

31.     Plaintiffs were both held in a small room for 8 hours in handcuffs and shackles. One officer tried to remove the shackles once they arrived at the station, per standard practice, but Defendant Chief Valenciano required the shackles remain on Plaintiffs. At no point were Plaintiffs combative or a flight risk to Defendants. The shackles were not used for legitimate safety reasons, instead Chief did so for maximum pain and discomfort as well as humiliation. The shackles were tight and caused pain to Plaintiffs.

32.     Plaintiffs were refused food, phone calls, and answers to their questions. Several officers intentionally ate food in front of Plaintiffs.

33.     Plaintiff Grisham requested and was denied a phone call to his attorney.

34.     When they were finally transferred to San Antonio, they were held as taser point and in full physical restraints, to sign their property paperwork.

35.     Upon information and belief, Defendant Officers were acting or otherwise responding to the scene pursuant ordinance 24-84. This order is unconstitutional and is superseded by state law.

36.     There is a lengthy history of Olmos Officers harassing Second Amendment demonstrators. In fact, several other videos online depict similar instances of police misconduct being perpetrated by some of the same officers who were present and involved in the March 27, 2018 incident.

37.     Plaintiff Grisham was charged with Interference with Duties of a Public Servant, Obstruction of a Passageway/Roadway, Resisting Arrest, and Assault.

38.     Plaintiff Everard was charged with Interference with Duties of a Public Servant, Obstruction of a Passageway/Roadway, and Disorderly Conduct.

39.     Two days later, on March 29, 2018, Olmos City Council repealed ordinance 24-84, explaining that it violated state law.

40.     Later, all charges against Plaintiffs were dropped.

41.     Upon information and belief, the Olmos Park police department, its Officers, and Defendant Police Chief Valenciano have communicated with other surrounding police

departments in an effort to stop Second Amendment activists from exercising their first Amendment rights.

42.     Upon information and belief, Defendant Chief Valenciano and Defendant officers have constructed and carried out plans to get Second Amendment activists off of the public sidewalk.

43.     Olmos Park Officers are trained to forcefully pressure second amendment protestors to stop protesting even when protestors are compliant with state and federal law.

44.     On multiple occasions, Defendants have cited Second Amendment activists with bogus charges. Such charges are typically dropped prior to trial as they are meritless.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Excessive Force)

45.     Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior allegations.

46.     At all times relevant herein, Defendants were acting under color of State law.

47.     Defendants use of force was objectively unreasonable.

48.     Defendants never gave Plaintiffs a lawful order. Defendants did not have reasonable suspicion to detain Plaintiffs. Defendants did not have probable cause to arrest plaintiffs.

49.     At no point did Plaintiff Everard resist officers. Nevertheless, officers unreasonably cuffed and shoved Plaintiff Everard. Plaintiff Everard never exhibited any signs of violence, nor did officers suspect Plaintiff Everard of being a violent criminal.

50.     Defendants acted unreasonable when they tased and shoved Plaintiff Grisham for backing away from an officer who was unlawfully attempting to detain or otherwise seize Plaintiff Grisham. Plaintiff Grisham exhibited no signs of violence, and he was not suspected of being a violent criminal. Defendants used unreasonable force when holding Plaintiff's at taser point once in full body restraints.

51.     Defendants were not in a high-pressure situation that would require split second decisions.

52.     Defendants used so much force on Plaintiffs so as to cause Plaintiff Grisham to sustain a concussion and a serious abrasion to his head.

53.     Defendants used so much force on Plaintiff Everard that they broke his wrist and caused him a significant shoulder injury for which he may be required to receive surgery for.

54.     At all times relevant, Defendants were required to obey the laws of the United States.

55.     At all times relevant, Plaintiffs had a clearly established right to be free from excessive force of this nature.

56.     At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently used excessive force on Plaintiffs.

57.     As a direct and proximate result of Defendants' unlawful actions, Plaintiffs suffered damages for their physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Unlawful Arrest)

58.     Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior paragraphs.

59.     At all times relevant herein, Defendants were acting under color of state law.

60.     Defendants acted unreasonably and unlawfully when they arrest Plaintiffs absent probable cause.

61.     A reasonably officer in the Defendants' situation would have understood that probable cause did not exist for an arrest.

62.     At all times relevant, Defendants were required to obey the laws of the United States.

63.     At all times relevant, Plaintiffs had a clearly established right to be free from arrest absent probable cause.

64.     At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently furthered malicious prosecution against Plaintiffs.

65.     As a direct and proximate result of Defendant's unlawful actions, Plaintiffs suffered damages for their mental, emotional, and physical injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Unlawfully Preventing Protected Conduct)

13

66.     Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior paragraphs.

67.     At all times relevant herein, Defendants were acting under color of state law.

68.     Plaintiffs have a First Amendment right to be present on public sidewalks.

69.     Plaintiffs have a statutory right to be present on public sidewalks in Texas while open carrying a firearm.

70.     Plaintiffs were engaged in constitutionally protected conduct when they were recording while open carrying on a public sidewalk.

71.     Defendants tased, shoved, and arrested Plaintiffs while they were exercising their First Amendment right to record officers on a public sidewalk.

72.     Defendants intentionally, knowingly, maliciously, recklessly, and/or unreasonably prevented Plaintiffs from recording police officers conducting their duties.

73.     Plaintiffs had a clearly established constitutional right to record the police.

74.     The Defendants' acts deprived Plaintiffs of the rights, privileges, and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

75.     As a proximate cause of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages as a result.

### COUNT IV
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Retaliation for Protected Conduct)

76.     Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior paragraphs.

77.     At all times relevant herein, Defendants were acting under color of state law.

78.     Plaintiffs have a First Amendment right to be present on public sidewalks.

79.     Plaintiffs have a statutory right to be present on public sidewalks in Texas while open carrying a firearm.

80.     Plaintiffs were engaged in constitutionally protected conduct when they were recording while open carrying on a public sidewalk.

81.     Defendants have frequently targeted Plaintiffs and others engaged in similar displays as Plaintiffs.

82.     In retaliation for engaging in protected conduct, Defendants arrested Plaintiffs for carrying firearms and recording the public view on a public sidewalk.

83.     Officers had no knowledge or information that would lead a reasonable officer in their situation to believe that there was probable cause to arrest Plaintiffs.

84.     At all times relevant, Defendants were required to obey the laws of the United States.

85.     At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and grossly negligently retaliated against Plaintiffs for engaging in protected conduct.

86.     As a direct and proximate result of Defendant's unlawful actions, Plaintiffs suffered damages for their physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

15

## COUNT V
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Unlawful Search and Seizure)

87.     Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior paragraphs.

88.     At all times relevant here in, Defendants were acting under color of state law.

89.     Defendants did not have reasonable suspicion to stop Plaintiffs.

90.     Defendants never gave Plaintiffs a lawful order.

91.     Defendants did not have probable cause to arrest and search Plaintiffs items.

92.     At all times relevant Defendants were required to obey the laws of the United States.

93.     At all times relevant, Plaintiffs had a clearly established right to be free from unlawful search and seizures of this nature.

94.     At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently unlawfully searched and seized Plaintiffs.

95.     As a direct and proximate result of Defendants' unlawful actions, Plaintiffs suffered damages for their physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Failure to Intervene)

96.     Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior allegations.

16

97.    At all times relevant herein, Defendants were acting under color of State law.

98.    Defendants observed excessive force and other constitutional violations being committed by their counterparts.

99.    Defendants had the opportunity and the means to prevent harm from occurring.

100.    Defendants stood by and let the harm unfold.

101.    The events did not unfold over a matter of moments, giving defendants ample opportunity and time to intervene.

102.    At all times relevant, Plaintiffs had a clearly established right to be free from state actors' failure to intervene.

103.    At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed their fellow officers to use excessive force against Plaintiffs and otherwise violate Plaintiffs' constitutional and statutory rights.

104.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs suffered damages for their physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT VII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourteenth Amendment – Deprivation of Property)

105.    Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior allegations.

106.    At all times relevant herein, Defendants were acting under color of State law.

107.    Defendants deprived Plaintiffs of their property without due process of law when they threw and destroyed Defendant Everard's camera, when they wiped the memory cards of Plaintiffs' go pro, and cellphones.

108.    Defendants seized and destroyed Plaintiffs' property without a court order, or without a hearing where Plaintiffs' could be meaningfully heard.

109.    At all times relevant, Plaintiffs had a clearly established right not to have their property seized and destroyed absent a warrant or court order.

110.    At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently deprived Plaintiffs' of their property without due process of law.

111.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs suffered damages for the loss of their property as well as their physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT VIII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Fourteenth Amendment - Failure to Provide Medical Care)

112.    Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior allegations.

113.    At all times relevant herein, Defendants were acting under color of State law.

114.    The Fourteenth Amendment to the United States Constitution requires state officials to provide medical care to individuals injured in their custody.

115.    As discussed herein, both Plaintiffs were severely injured by the force used by Defendants.

116.   Instead of promptly providing medical attention, Defendant Chief Valenciano waved away the EMS vehicle and first responders who had arrived at the scene to take Plaintiffs to the hospital. They were told to keep it moving instead of providing treatment. After denying proper medical attention, Defendant Valenciano later instructs his officers to take a longer than necessary route, for no reason other than to prolong Plaintiffs suffering.

117.   At the police station, Defendant Valenciano ordered WMS to stay back and not provide care to Plaintiff Grisham who was nearly passing out. He could not stand up on his own nor did he know the date.

118.   Defendant Valenciano intentionally delayed, denied, and interfered with medical treatment when Plaintiffs were obviously severely injured.

119.   Defendants' acts and omissions demonstrate deliberate indifference to Plaintiffs serous medical needs in violation of the Fourth and Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983.

120.   As a proximate result of the illegal and unconstitutional acts of Defendants, Plaintiff was harmed and suffered damages for her physical, mental, emotional injury and pain, fright and shock, mental anguish, humiliation, and embarrassment.

121.   As a proximate result of the illegal and unconstitutional acts of Defendants, Plaintiff was harmed and suffered damages for her physical, mental, emotional injury and pain, fright and shock, mental anguish, humiliation, and embarrassment.

**COUNT IX**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**(Malicious Prosecution)**

122.    Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior paragraphs.

123.    At all times relevant herein, Defendants were acting under color of state law.

124.    Defendants played an integral part in the prosecution of Plaintiffs when the cited Plaintiffs with tickets that were wholly unsupported by any legal basis or probable cause.

125.    Defendants prosecuted Plaintiffs with malice when they cited Plaintiffs despite any legal basis to do so in order to stop Plaintiffs from exercising their First Amendment and statutorily protected rights.

126.    Defendants prosecuted Plaintiffs with malice when they made false statements regarding the conduct of Plaintiffs and the ammunition possessed by Plaintiffs.

127.    Defendants demonstrated malice in prosecuting Plaintiffs through various other dishonest actions previously stated.

128.    Defendants did not have probable cause for citing Plaintiffs because Defendants never had reasonable suspicion to stop Plaintiffs, Defendants never gave Plaintiffs a lawful order, and Plaintiffs never engaged in any conduct which a reasonable officer would believe gave him or her probable cause to cite Plaintiffs.

129.    Plaintiffs' proceedings terminated in their favor.

130.    At all times relevant, Defendants were required to obey the laws of the United States.

131.   At all times relevant, Plaintiffs had a clearly established right to be free from malicious prosecution.

132.   At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently furthered malicious prosecution against Plaintiffs.

133.   As a direct and proximate result of Defendants' unlawful actions, Plaintiffs suffered damages for their physical, mental and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## MUNICIPAL LIABILITY 42 U.S.C. § 1983

134.   Defendants Officers actions, and the actions of the Olmos Park Police Department in previous open carry instances demonstrate a policy practice or custom to deprive Plaintiffs and other open carry activists of their first amendment rights. On multiple occasions, individual Defendants and the Olmos Park police department have detained, arrested, or otherwise charged Second Amendment activists for open carrying per Texas State Law.

135.   Time and time again, Defendants have cited second amendment activists with meritless charges, only to have these charges dropped prior to trial.

136.   Despite the fact that these charges are frequently dropped, Defendants continue to cite Second Amendment activists in hopes to curtail the activists from exercising their First Amendment Rights.

137.    Defendants' actions and inactions constitute an impermissible policy practice or custom that deprive Plaintiffs of their right to be free from retaliation for protected conduct.

138.    At all times relevant, Plaintiffs had a clearly established right to be free from unlawful policies, practices, and customs.

139.    Ordinance 24-84 was unlawful as it conflicted with Texas law permitting the open carry of fire arms. Thus, it was an unlawful policy or custom which was the moving force behind Plaintiffs' injuries.

140.    The City Council is a final policy maker for Defendant City.

141.    Even if Ordinance 24-84 was not unlawful, it was an officially adopted policy that had plainly obviously consequences resulting in a constitutional violation.

142.    Further, the City had notice of such recurring constitutional violations stemming from Ordinance 24-84.

143.    As a direct and proximate result of Defendant City's unlawful actions, Plaintiffs suffered damage for their physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, Christopher Grisham and James Everard, demands judgment and prays for the following relief, jointly and severally, against all Defendants.

a.   Full and fair compensatory damages in an amount to be determined by a jury;

b.   Punitive damages in an amount to be determined by a Jury;

22

c.  Reasonable attorney's fees and costs of this action; and

d.  Any such other relief as appears just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Fed. R.

Civ. P. 38(b).

Respectfully submitted,

EXCOLO LAW, PLLC

By:     */s/ Solomon M. Radner*
         Solomon M. Radner
         Michigan Bar No. P73653
         Attorney for Plaintiffs
         26700 Lahser Rd, Suite 401
         Southfield, MI 48033
         (866) 939-2656
Dated: March 26, 2020          sradner@excololaw.com