IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

F I L E D

NOV – 8 2021

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | | |
|---|---|---|
| CHRISTOPHER GRISHAM, JAMES EVERARD, *Plaintiffs* | § § § § | |
| vs. | § § | Case No.: SA-20-CV-00387-OLG |
| RENE VALENCIANO, J. LOPEZ, HECTOR RUIZ, A. VERA, CITY OF OLMOS PARK *Defendants.* | § § § § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COME Defendants Rene Valenciano, J. Lopez, A. Viera, Hector Ruiz, and City of Olmos Park ("Defendants") and file their Motion for Summary Judgment pursuant to Fed. R. Civ. Proc. 56(b) and would show the Court the following:

## I. NATURE OF THE LAWSUIT

1.      Plaintiffs Christopher Grisham and James Everard (hereinafter "Grisham" or "Everard" and/or collectively referred to herein as "Plaintiffs") are self-proclaimed gun activists.[1] They sued Olmos Park Police Chief Rene Valenciano, Sergeant Hector Ruiz, and Officers Adrian Viera, and James Lopez for Plaintiffs' arrest on March 27, 2018, at the corner of McCullough Avenue and Earl Street in the City of Olmos Park, Texas.

2.      Plaintiffs sued Defendants under 42 U.S.C. §1983 for violation of their civil rights under

---

[1] Also referred to as "auditors" and by the police community as "police agitators".

the Fourth Amendment excessive force, unlawful arrest, unlawful search and seizure; First Amendment unlawfully preventing protected conduct, and retaliation for protected conduct; Fourteenth Amendment deprivation of property, and failure to provide medical care; Failure to Intervene; Malicious Prosecution; and Municipal Liability.  **[Dkt. 1].** Plaintiffs filed the instant lawsuit on March 26, 2020.

## II.  BACKGROUND FACTS

3.      Plaintiffs are active on social media. Plaintiff Everard posts videos from his YouTube account announcing open carry protests and/or rallies and goes by the username, "NOT SO SLIM JIM". **[Exhibit "A" pp. 7:6-10; 141:1-5].**  The video content contains his beliefs concerning individuals who openly carry firearms in Texas and the peace officers' encounters with these individuals. **[Exhibit "A" pp. 85:24-25; 86:1-3; 143:6-13; 145:19-25; 146:1-4].**

4.      Plaintiff, Grisham, also has his own YouTube account under the name of "CJ Grisham", where he posts videos that contain provocative topics along with Grisham's commentaries. Grisham also creates the content and monitors the comments on the Open Carry Texas YouTube channel. **[Exhibit "B" pp. 10:1-25; 11:1-25].**

5.      Plaintiff Everard uses YouTube videos to inform other gun activists of their exploits and arrests in order to increase the number of viewers to their YouTube channel for entertainment. **[Exhibit "A" pp. 158:21-25; 159:1-4; 160:20-25; 161:1-8; Att. 7, attached hereto as Exhibit "A-7"].**  Plaintiffs obtain revenue from their YouTube channels through payments from viewers through apps such as Venmo, PayPal, and Cash App. **[Exhibit "B" pp. 33:1-3; 245:25; 246:1-20].**  Viewers that see their videos and subscribe to their YouTube channels make money for Plaintiffs **[Exhibit "A" pp. 161:9-25; 162:1-25; 163:1-8 ].**

6.      Both Everard's and Grisham's YouTube channels invite individuals to comment on the

video and/or the discussion occurring at the time. **[Exhibit "A" pp. 166:22- 25; 167:1-7]**. Everard uses some of his own videos to advertise upcoming rallies or protests and makes exaggerated claims where he indicates to his listeners that he would be, "armed to the fucking teeth" so that law enforcement officers would be outnumbered and not confront the protestors or rally participants. Everard refers to these videos as "shit-talking videos" to get people excited about coming to the rallies and/or protests. **[Exhibit "A" pp. 145:19-25; 146:1-25; 147:1-25;  155:3-25; 156:1-25; 157:1-3; 158:1-12; Att. 6 attached as Exhibit "A"-6].**

A.      **Grisham Orchestrated the March 27, 2018, Incident**

7.      The incident made the basis of Plaintiffs' lawsuit stems from a telephone call Plaintiff Grisham made to Chief Valenciano on March 26, 2018. Grisham asked Chief Valenciano: "If I come to Olmos Park, I want to know if, I guess, the police are going to draw guns on me if I'm lawfully carrying"? He did not indicate a date when he would arrive, nor did he indicate that he was going to organize a protest or rally in Olmos Park. Grisham believed that he had no duty to tell Chief Valenciano. **[Exhibit "B" pp. 125:11-25; 126:1-8], [Exhibit "B", p. 173:2-5]; [Exhibit "B-1" YouTube Audio time stamp 5:09-5:33]**.  Chief Valenciano acknowledged that it would be legal to open carry a long gun in public and a handgun with a valid license as long as that person was not breaking any other laws. **[Exhibit "B-1" YouTube Audio time stamp 1:44-2:00, 3:30-3:37, and 5:35-5:47]; [Exhibit "F" pp. 20:2-22, 115:6-13].**

8.      After his phone call with Chief Valenciano, Grisham planned the encounter with the police for the following day. **[Exhibit "B" pp. 71:5-17; 126:12-18].**   Grisham selected Everard as one of the four individuals to come to Olmos Park because he was a veteran and would not overreact if Olmos Park violated their rights. As one of the Directors for Open Carry Texas, Everard volunteered first to carry the long gun. **[Exhibit "B" pp. 72:25; 73:1-15].** Grisham indicated that

members of Open Carry Texas go around the state to educate people and get them used to seeing a good guy with a gun. Grisham's plan was to **"escalate"**[2] from one to four people walking with long guns because he wanted to see the "reality in Olmos Park" meaning the people they were going to Olmos Park for were **not** Open Carry Texas members and he wanted to go to the City before their scheduled major protest.[3]  **[Exhibit "B" pp. 73:6-9, 20-25; 74:1-11].** Grisham picked the corner of McCullough Avenue and Earl Street for Everard to stand and display his assault-style rifle on the front of his chest and his holstered handgun until the police arrived. **[Exhibit "B" 76:4-8, 23-25; 77:1-2].** Everard testified that he was carrying a .22 rifle altered to look like an assault rifle. **[Exhibit "A" pp. 182:20-25; 183:1-14].** Grisham also called auditors to video tape the encounter and prepositioned the auditors at the scene.  **[Exhibit "B" pp. 77:16-24; 78:1-25].**

9.      Citizens called 911 alarmed that an individual was standing at the corner of McCullough Avenue and Earl Street carrying a rifle. **[Business Record Affidavit of Coleen Ferruzzi, Dispatch Supervisor for the City of Alamo Heights; Exhibit D and 911 Audio calls designated as Exhibits "D-1" – "D-2", *mislabeled as "A-1" and "A-2"*].**   One eyewitness called 911 to report seeing Everard on the sidewalk near the street with an assault rifle. **[Exhibit "D- 1" time stamp 0:10-0:20 and Exhibit "D-2" time stamp 0:04-0:14].** In later written statements, the witnesses expressed that during the time they called 911 to report Everard with a rifle, they were in fear of their lives and the feeling of being alarmed and scared of an active shooter situation. **[Exhibit "E"[4] Affidavit of Chief Valenciano, and Exhibits "E-1 – E-6" witness statements].**

---

[2] "If -- if everything went well, we would put two people out there. If everything went well, we would put three people out there. . . . And then if everything went well, we'd put four people out there". **[Exhibit "B" p. 74:18-24; 75:16-18].**

[3] See YouTube Audio **[Exhibit "C", time stamped 0:09:43]** "Join us for a protest against this tyrant on April 7th at noon, beginning on the south side of the HEB parking lot in Olmos Park. Bring your lawfully open carried firearm and let's let this chief know that Texans will not stand idly by a police department blatantly violates our rights".

[4] Included is Chief Valenciano's Business Record Affidavit for body and dash cam videos from Officers Lopez, Viera and Ruiz.

Grisham is aware of this likelihood that people will call the police and report that the individuals with guns are threatening them or pointing their guns at them and that is a reason they film their activism to prove that it is false. **[Exhibit "B" p. 79:2-8].** Grisham testified that Everard carrying his rifle in front of him was the proper way to carry a rifle pursuant to Open Carry guidelines, and one must assume every gun is loaded. **[Exhibit "B" pp. 112:17-25; 113:1-6; 119:4-11; Exhibits "B-4" and "B-5"].**

**B.**    **Everard's behavior was alarming under Texas Penal Code §42.01**

**(See video taken by Everard from his deposition, attached hereto as Exhibit "A-5")**

10.     Once the 911 calls were received, the Olmos City Police Department had a duty to respond and investigate. **[Exhibit "F" pp. 46:3-9; 78:14-20; 107:18-20; 110:13-17; 150:8-9]; [Exhibit "G" Defendants' Expert Staton Affidavit, Exhibit "G-2" ¶4, DEFT 00975]** City of Olmos Park officers had reasonable suspicion to approach and detain Everard after citizen 911 calls. When approached, Everard refused Officers Lopez and Viera's commands to lay on the ground. **[Exhibit "A" p. 128:7-13].** Everard's investigatory stop was based on reasonable suspicion of a violation of the Texas Penal Code §42.01 "Disorderly Conduct". Specifically, subsection (a) (8) for display of a firearm in a public place in a manner calculated to alarm.

11.     Everard testified in his deposition that the plan was to draw the attention of the police and not the public. **[Exhibit "A" pp. 91:19-25; 92:1-2].** However, when asked why he did not just stand on the corner across the street from the Olmos Park Police Station, Everard responded that the area across the street from police station was in a residential area, which they wanted to stay away from, and the other side was private property. **[Exhibit "A" pp. 26:1-6; 91:13-25; 92:1-25; 93:1-25; 94:1-25; 95:1-25].** When asked if the area close to the corner of McCullough Avenue and Earl Street had any residential homes nearby, he indicated that he did not notice the restaurant

across the street nor the structures behind the restaurant **[Exhibit "A" pp. 111:2-25; 112:1-4]**. Attached as **Exhibit "I"** the Affidavit of Ricardo Cavazos, Building Official/Code Compliance Officer for the City of Olmos Park attesting that there were private residences located close to the corner of McCullough Avenue and Earl Street.

12.     On March 27, 2018, Everard and Grisham were both standing on the corner of McCullough Avenue and Earl Street. **[Exhibit "B" pp. 101:5-25; 102:1-8, 17-21; 103:7-19; "B-2" and "B-3"]**. Plaintiffs were aware that this was a high traffic location with a busy Shell gas station across the street. **[Exhibit "A" pp. 91:13-18]; [Exhibit "B" pp. 114:23-25; 115:1-3]**. Everard's video **[Exhibit "A-5"]** shows that Chief Valenciano approaches Everard in an attempt to assess the situation. Grisham, who was carrying a visibly holstered .45 caliber semiautomatic handgun over his shirt because, "It's easier to access it if I need it in self-defense" **[Exhibit "B" pp. 103:7-19; 110:7-14]** was standing next to Everard. He indicated on his video that he was there to teach the police about the law. **[Exhibit "B" pp. 184:19-25; 185:1-7] [Exhibit "B-6", time stamp 2:30-2:42]** Grisham interrupted Chief Valenciano's questioning of Everard while aggressively approaching Everard and the Chief Valenciano to videotape the encounter. Chief Valenciano and Officer Viera's repeated commands for Grisham to "get back" or "move away" were ignored. **[Exhibit "B" pp. 186:13-24]**. Chief Valenciano then directed Officer Viera to arrest Grisham for interfering in his investigation with Everard. **[Exhibit "B-6", time stamp 4:00-4:14]**. While Viera attempted to handcuff Grisham, Grisham resisted and pulled his arms away resulting in his arm making contact with Officer Viera's forearm.  Chief Valenciano observed armed and unarmed third parties flanking the officers while Grisham continued to struggle with Officer Viera. Chief Valenciano addressed the threat of third parties flanking the officers and Grisham's struggling with Officer Viera and tased Grisham causing him to fall backwards and hitting his head on the asphalt.

**[Exhibit "G", ¶¶5, 12, DEFT 00974, 00978] [Exhibit "B-6", time stamp 4:04-4:30; Exhibit "L" time stamp 5:30-6:00].** Grisham was then put in handcuffs but refused to walk to the vehicle. Officers Viera and Lopez lifted Grisham and carried him to the police vehicle. **[Exhibit "J", time stamp 7:40-8:05; Exhibit "L" time stamp 6:55-7:15].** Everard was also placed in handcuffs and was placed in prone position by Chief Valenciano and Sergeant Ruiz. **[Exhibit K, time stamp 4:46-6:05].**

13.     Due to Everard's large body size, he fell when Chief Valenciano and Sergeant Ruiz attempted to place him on the ground. **[Exhibit "K", time stamp 4:46-4:50].** Everard did not complain of any injuries after the accident. **[Exhibit "J" time stamp 9:00-10:16].** When he returned home to Temple, Texas, after the incident, he went to a hospital emergency room. He indicated to the ER personnel that he was roughed up by cops and his lawyer wanted to have him checked out. He admitted in his deposition that his statement to medical personnel was sarcastic. **[Exhibit "A" pp. 210:10-25, 211:1-23].**

## IV.  ARGUMENTS AND AUTHORITIES

### A. Summary Judgment Standard

14.     "A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." *Fed. R. Civ. Proc. 56(b)*. A summary judgment movant may either submit evidence that negates the existence of a material element of the opponent's claim on which the opponent has the burden of proof or may demonstrate that there is insufficient or no evidence in the record that supports such claim. *Bourdeaux v. Swift Transp. Co. Inc.,* 402 F.3d 536, 540 (5th Cir. 2005); *Lincoln General Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir. 2005). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson* at 247-48.   When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the allegations of its pleadings.   It must identify record evidence that support each element of its claim.   *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 305 (5th Cir. 2004).   Rule 56 mandates the entry of summary judgment against a party who fails to, in response to a motion for summary judgment, establish the existence of an essential element of that party's case.   *Beard v. Banks,* 126 S. Ct. 2572, 2578 (2006). But "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela,* 684 F.3d 564, 571 (5th Cir. 2012) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)). Furthermore, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); accord *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

15.     When ruling on a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). However, when the nonmoving party fails "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley,* Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

**B.      Greater weight is given to video recording evidence.**

16.     "Further, although courts view evidence in the light most favorable to the nonmoving party, they give **greater weight**, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Valderas v. City of Lubbock,* 937 F. 3d 384, 388 (5th Cir. 2019), reissued 774 Fed. Appx. 173, 176 (Emphasis added) citing, *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). "Although we view the evidence in the light most favorable to the nonmoving party, the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas* at 388, citing, *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (citing *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010)).

17.     "However, the general proposition that we accept plaintiff's version of the facts in the qualified-immunity summary-judgment setting 'is not true to the extent that there is *clear contrary* video evidence of the incident at issue.' *The Estate of Dillon Taylor, et al. v. Salt Lake City, et al.*, 2021 WL 4955461 * 8 (10th Cir. Utah, Oct 26, 2021) citing *Taylor Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) (emphasis added); *Emmett*, 973 F.3d at 1131 (noting the appropriateness of relying on video evidence that clearly contradicts plaintiff's "story"); *cf. Bond*, 981 F.3d at 813 n.7 ("Because this is an appeal from a grant of summary judgment, we describe the facts viewing the video in the light most favorable to the Estate, as the nonmoving party."). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should *not* adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007). "Nevertheless, because there is video and audio recording of the event, we are not required to accept factual allegations that are "blatantly contradicted by the record."

*Tucker v. Shreveport* 998 F. 3d 165 (5th Cir. 2021) citing *Scott* at 380.  "Rather, we should 'view [] the facts in the light depicted by the videotape'." *Id.* at 381.

## C.  Qualified Immunity

18.     Qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Bishop v. Arcuri,* 674 F.3d 456, 460 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *The Estate of Dillon Taylor*, at *8 citing, *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) ("[T]he Supreme Court has recognized that public officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties.")

19.     The doctrine of qualified immunity protects public officials from suit and liability for damages under § 1983 unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003). Thus, in determining qualified immunity, courts engage in a two-step analysis: **(1)** <u>was a statutory or constitutional right violated on the facts alleged</u>; and **(2)** <u>did the defendant's actions violate clearly established statutory or constitutional rights of which a reasonable person would have known.</u> *Id.* at *623–24.* The two steps of the qualified immunity inquiry may be performed in any order. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

## V.  INDIVIDUAL OFFICERS CONDUCT DID NOT VIOLATE A CLEARLY ESTABLISHED LAW.

20.     This Court need not first decide if Defendants violated the Fourth Amendment or if Defendants recklessly created a situation that would require the Court to determine if the alleged force utilized by officers violates the Fourth Amendment. In the fact situation in this case, Defendants clearly did not violate any clearly established law.

21.     The very recent holdings in U.S. Supreme Court's opinions in *Tahlequah v. Bond*, 2021 WL 4822664 (October 18, 2021 (*per curiam*) and *Daniel Rivas-Villegas v. Ramon Cortesluna,* 2021 WL 4822662 (October 18, 2021) (*per curiam*), determine that Plaintiff must show that a Defendant violated a clearly established law.

22.     The Supreme Court in *Bond* found that, "The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). As we have explained, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " *District of Columbia v. Wesby*, 583 U. S. ——, —— – ——, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)." *Bond* at *2.

### A.     Plaintiffs must identify a case that put the Defendants on notice that their specific conduct was unlawful.

23.     The Plaintiffs allegations that Defendants violated a clearly established law is no longer an accepted generalized allegation to assert as a waiver of a defendant's immunity defenses. "Although 'this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond

debate.'" *Cortesluna* 2021 WL 4822662 *2, citing *White*, 580 U. S., at ——, 137 S. Ct., at 551 (alterations and internal quotation marks omitted). This inquiry "must be undertaken **in light of the specific context of the case,** not as a broad general proposition." *Id.* citing *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*) (internal quotation marks omitted) (Emphasis added). "[S]pecificity is especially important in the Fourth Amendment context, where ... it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12, 136 S.Ct. 305 (alterations and internal quotation marks omitted). In order to show a violation of clearly established law, Plaintiffs must identify a case that put the Defendants on notice that their specific conduct was unlawful. Neither Plaintiff has identified any Supreme Court case that addresses facts like the ones at issue here that waives Defendants' immunity defenses.

## VI. PLAINTIFFS FAIL TO ESTABLISH A FOURTH AMENDMENT VIOLATION OF EXCESSIVCE FORCE

24.     There are two distinct moments of alleged force that must be separately analyzed: (1) Chief Valenciano's tasing of Grisham, and (2) Sergeant Ruiz' and Chief Valenciano's attempt to restrain Everard on the ground. **[Exhibit "B-6", time stamp 4:04-4:30; Exhibit "L" time stamp 5:30-6:00; Exhibit "J", time stamp 7:40-8:05; Exhibit "L" time stamp 6:55-7:15].**

25.     For purposes of liability under 42 U.S.C. § 1983, excessive force claims arising from an arrest or investigatory stop invoke the protection provided by the Fourth Amendment of the United States Constitution against "unreasonable seizure." Fourth Amendment jurisprudence, however, has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat[5] thereof to effect it. *Graham v.*

*Connor,* 490 U.S. 386, 396 (1989). Therefore, determining whether the force used to effect a particular seizure is "reasonable" for purposes of the Fourth Amendment requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake. Regarding that analysis, the Supreme Court, in *Graham,* 490 U.S. at 396, provided the following guidance:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), [] its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

26.     Importantly, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Therefore, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). Instead, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Although all disputed facts are construed in favor of the non-movant in the summary judgment context, evaluating the reasonableness of an officer's use of force requires consideration of how a reasonable officer would have perceived those facts. *Griggs v. Brewer,* 841 F.3d 308, 313–14 (5th Cir. 2016).

27.     "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. "An officer's evil intentions

will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

## A. Chief Valenciano's and Officers Ruiz's, Lopez's and Viera's Actions Were Objectively Reasonable and Their Use of Force Was Not Excessive to The Need

28.     Plaintiffs provide insufficient facts to support their claim that Defendants acted unreasonably.  Even if the official's conduct violated a clearly established constitutional right, (which Plaintiffs cannot show) the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Lukan v. N. Forest Indep. Sch. Dist.*, 183 F.3d 342, 346 (5th Cir. 1999); *Pfannstiel v. City of Marion*, 918, F.2d 1178, 1183 (5th Cir. 1990).

29.     Recognizing that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *Graham v. Connor*, 490 U.S. at 397, the Supreme Court has warned against "second guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012).

## B. There was sufficient probable cause to arrest Plaintiffs.

30.     An arrest based on probable cause cannot constitute an unreasonable seizure within the meaning of the Fourth Amendment. *Halcomb v. Woods*, 767 F. Supp. 2d 123 (D.D.C. 2011). Whether a charge is later dropped, or a defendant is found not guilty is immaterial to the probable cause analysis. *Buehler v. City of Austin/Austin Police Dep't,* No. A-13-CV-1100- L, 2015 WL 737031, * at 12 (W.D. Tex. Feb. 20, 2015); *Baker v. JvfcCol/an*, 443 U.S. 137, 145 (1979). The Constitution does not guarantee that only the guilty may be arrested. Id. at 145. "The ultimate release of charges ... is of no significance in the probable cause analysis. "The Constitution is not blind to the fact that police officers are often forced to make split-second judgements." *The Estate of Dillon Taylor v. Salt Lake City* 2021WL 4955461*10 (10th Cir. October 26, 2021), quoting *City*

*& County of San Francisco v. Sheehan*, 575 U.S. 600, 612 (2015). "The Constitution permits officers to make reasonable mistakes. Officers cannot be mind readers and must resolve ambiguities immediately."; *Taylor at \*10, citing Brown v. United States*, 256 U.S. 335, 343 (1921).

31.    "[I]f a reasonable officer in [the] [d]efendant['s] position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others," that officer's use of force is permissible. *Taylor* at \*10, citing *Est. of Larsen*, 511 F.3d at 1260 (emphasis omitted) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004). "Even if the officers misperceived [the suspect's] defensive movements as aggressive, they are entitled to qualified immunity if the misperception was reasonable." *Taylor* at \*12. ("Even if the officers misperceived [the suspect's] defensive movements as aggressive, they are entitled to qualified immunity if the misperception was reasonable."). *Id.* Faced with the situation of Everard, a large man wearing dark clothing with an assault-like rifle, carrying a holstered gun, openly and loudly verbally challenging officers' commands, wearing a bullet proof vest and a hat with the words, "front toward enemy", could be reasonably perceived by an officer as a threat. **[Exhibit "G", Staton's Affidavit, Exhibit "G-2" Supp Expert Report ¶27 DEFT 00983; Exhibit "H" photo of hat]; [Exhibit "A" pp. 103:14-25; 107:22-25; 112:18-25; 114:3-6; Exhibits "A-1", "A-2", "A-4", photos of Everard]** Grisham's actions in interfering with Chief Valenciano's investigation and detention of Everard, resisting arrest and assaulting Officer Viera, while numerous individuals surrounded the officers could reasonably be perceived by an officer as a serious threat. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Taylor* at 17, quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

**C.    There was sufficient probable cause to arrest Everard for disorderly conduct.**

32.    The    supporting    Texas    case    on    the    disorderly    conduct/open    carry    issue    is

*Ex parte Poe*, 491 S.W.3d 348 (Tex. App.–Beaumont 2016, pet. ref'd). In *Poe,* the court of appeals held that "[A]lthough there clearly [is a] constitutional right [ ] to bear arms ... there is <u>no constitutionally protected right</u> to display a firearm in a public place *in a manner that is calculated to alarm.*" *Id.* at 355. Plaintiff Everard believes that as long as he is not making threats to people or pointing or waving his gun around, he is not breaking the law and he does not believe that he is responsible for how other reasonable people perceive his conduct. **[Exhibit "A" p. 84:4-11]**. Grisham believes that if someone calls and reports a man with a gun and he is pointing it at people or he is acting delusional, the police would then have reasonable suspicion to investigate. **[Exhibit "B" p. 169:3-11]**. Although decided after the date of the incident, Defendants agree with the holding in *State v. Ross*, 573 S.W. 3d 817 (Tex. Crim. App. 2019) and its progeny *Chambers v. State*, 2020 WL 4875849 *2 (Tex. App.—Eastland, 2020, pet. ref'd)(holding that the meaning of the phrase "a manner calculated to alarm" is "a manner that is objectively likely to frighten an ordinary, reasonable person.")

33.     The Court in *Poe* held  the terms used in  P.C.§42.01 (a) (8) are not vague and should be given their common meaning as follows: "alarm" means "fear, or terror resulting from a sudden sense of danger"; "manner" means the "mode or method in which something is done or happens"; and "calculated" means as, "planned or contrived so as to accomplish a purpose or achieve an effect, thought out in advance, and deliberately planned". *Id* at 354.  Utilizing the plain language in the Disorderly Conduct statute, it is reasonable to interpret Everard's conduct was, "in a manner that is calculated to alarm."  The facts in this case appear not to provide evidence that Plaintiffs' constitutional rights were violated. Despite the Olmos Park Police Officers' acknowledgement of the new open carry law, it is <u>not</u> clearly established that Everard's above-referenced conduct and appearance was<u>_not</u> alarming and excepted from Penal Code §42.01 "Disorderly Conduct."

Therefore, Defendants had probable cause to detain and arrest Plaintiffs.

34.      Under the independent intermediary doctrine, even a police officer who acted with malice will not be liable if the facts supporting the arrest warrant are put before an impartial intermediary, such as a magistrate. *Buehler v. City of Austin/Austin Police Dep't,* 824 F. 3d 548, 553-554 (5th Cir. 2016).   Whether a charge is later dropped, or a defendant is found not guilty is immaterial to the probable cause analysis. *Id.*; *Baker v. JvfcCol/an,* 443 U.S. 137, 145 (1979).

35.      A Magistrate Judge found probable cause for the charges against Everard and Grisham and set bail. The dismissal came afterwards. The independent intermediary doctrine applies in this case where Plaintiffs claim a lack of probable cause for their arrest.

**D. Plaintiffs cannot demonstrate violations of the First and Fourth Amendment in the search and seizure of phones and electronic recording devices**

36.   Plaintiffs assert unlawful search and seizure alleging that Defendants did not have probable cause to search Plaintiffs items. **[Dkt.¶¶87-95].**   Plaintiffs just offer mere conclusory allegations to support this allegation. In addition, Plaintiffs cannot demonstrate that Defendants did not have probable cause for the seizure and detention of their property subject to their arrest.

### VII.   PLAINTIFFS FAILTO ALLEGE THE VIOLATION OF A FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT

37.      Plaintiffs assert that Defendants deprived Plaintiffs of their Fourteenth Amendment rights under the United States Constitution. **[Dkt. 1, Plaintiffs' Complaint and Jury Demand]**. However, it is the Fourth Amendment that provides the standard for evaluation of Plaintiffs' alleged excessive force claim and not the Fourteenth Amendment. *Baker v. McCollan,* 443 U.S. 137, 144, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979).   When the general due process rights guaranteed by the Fourteenth Amendment are congruous with rights guaranteed by another more explicit right, such as the Fourth Amendment's protection against the excessive use of force in an

arrest, the more explicit right supersedes "the more generalized notion of substantive due process." *Graham v. Connor*, 490 U.S. 395, "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") *Id.* at 395. Plaintiff cannot repackage a Fourth Amendment claim as a Fourteenth Amendment due process violation. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 812-13, 127 L. Ed. 2d 114 (1994). Therefore, Plaintiffs have not provided the grounds for a Fourteenth Amendment cause of action that entitles them to any relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As such, Plaintiffs have no conceivable Fourteenth Amendment excessive force claim.

## VIII.   NO FOURTEENTH AMENDMENT VIOLATION FOR FAILURE TO INTERVENE AND FAILURE TO RENDER MEDICAL ATTENTION

38.     Plaintiffs assert that Defendants observed excessive force and other constitutional violations being committed by their counterparts and did nothing to intervene. **[Dkt. 1, ¶¶96-104]**. But there is no evidence that any one Defendant knew what the other defendants would do, and the events unfolded very rapidly. Defendants therefore lacked any realistic opportunity to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (holding that officers can be held liable for failing to intervene only if they had a realistic opportunity to do so).

39.     Plaintiffs' contention that Defendants denied Plaintiffs medical treatment is without merit. In order to be liable for a violation of a detainee's clearly established constitutional right to medical care, the official must have had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk. *Schmidt v. State of Texas*, 2009 U.S. Dist. LEXIS 126472 (S.D. Tex. Aug. 17, 2009) at pg. 6 citing, *Hare v. City of Corinth,*

*Miss.,* 74 F. 3d 633 at 650 (5th Cir. 1996) (en banc). Chief Valenciano and the other officers testified in their depositions that the area where the incident occurred was not secure, so any emergency vehicle was directed to go to the Olmos Park Police Station, which is located very close to the scene of the incident **[Exhibits "J" time stamp 9:23-9:55; Exhibit "F" p. 171:21-23; Exhibit "B" p. 190:14-20, 192:14-17].** The time sequence from when Grisham was tased until the time EMS arrived at the police station was approximately nine (9) minutes **[Exhibit "L" time stamp 5:40-14:50].** The video after the arrest demonstrates that Grisham was not in a state of distress or displayed a serious medical need for medical attention. In fact, he joked that he was Superman when he refused to walk to the patrol car. **[Exhibit "J" time stamp 7:50-8:00; Exhibit "L" time stamp 7:07-7:14].** In Everard's case, he did not request medical attention, nor did he appear to be in distress to require immediate medical attention. The videos provide evidence that Plaintiffs cannot demonstrate that Defendants had subjective knowledge of a substantial risk of serious harm to Plaintiffs but responded with deliberate indifference.

## IX. NO FIRST AMENDMENT RETALIATORY ARREST WHERE OFFICERS HAD PROBABLE CAUSE

40.     To state a retaliation claim under the First Amendment, the plaintiff must allege that: "(I) they were engaged in the constitutionally protected activity, (2) the defendant's actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). However not all retaliatory acts are actionable as a violation of the First Amendment. Some are simply "too trivial or minor" notwithstanding any chilling effect. *Id.*

41.     Plaintiffs allege that their First Amendment rights were violated by Defendants for recording officers on a public sidewalk and were arrested as retaliation for exercising their right to

record on a public sidewalk. **[Dkt. 1, ¶¶66-86].** However, Plaintiffs did not testify that Defendants ordered them to stop filming, nor that they were arrested for filming police officers.  Plaintiffs just assert conclusory allegations. Therefore, their unlawfully preventing protected conduct and retaliation claims fail.

## X. THERE IS NO *MONELL* LIABILITY FOR THE CITY OF OLMOS PARK

42.     To recover a judgment against a city under Section 1983, a Plaintiff must *allege* and establish that he sustained a deprivation of a constitutional or other federally protected rights as a result of some official policy, practice or custom of that governmental entity. *Monell v. Department of Social Services,* 436 U.S. 658, 691-94 (1978). Plaintiffs asserts in their Complaint that unconstitutional City policy previously deprived open carry activists of their First Amendment rights. [Dkt. 1, ¶134]. Plaintiffs also assert that "On multiple occasions, individual Defendants and the Olmos Park police department have detained, arrested, or otherwise charged Second Amendment activists for open carry per Texas State Law" [Dkt. 1 ¶134].

43.     In order for a municipality to be *liable* for its policies, practices, or customs, Plaintiff must show "either (1) that a policy *itself* violated federal law or authorized or directed the deprivation of federal rights or (2) that a policy was adopted or maintained by the municipality's policymakers with 'deliberate indifference' as to its known or obvious consequences...a showing of simple or even heightened negligence will not suffice.'" *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997).  In a §1983 suit against a city, the claim must be based upon the implementation or execution of a policy or custom which was <u>officially</u> adopted by the City. *Monell* holds that a governmental entity can be found liable under Section 1983 <u>only</u> if the entity itself causes the constitutional violation at issue. *Monell,* 436 U.S. at 690-91. Thus, Plaintiffs must allege with **specificity** and **particularity** that their claims are based on the City's official

policy, **not** the policy of an individual official or officer. *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984).

44.     Respondeat superior or vicarious liability cannot be a basis for recovery under Section 1983. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)   Municipalities "... are liable only for their own acts and not those attributed to them by principles of respondeat superior. *" Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (footnote omitted).

45.     Plaintiffs' claims must be dismissed because Plaintiffs' claims are erroneously premised on respondeat superior liability.   Plaintiffs assert that Ordinance 24-84 was unlawful as it conflicted with Texas law permitting the open carry of firearms, which was the unlawful policy of the moving force behind Plaintiffs' injuries **[Dkt. 1, ¶139]**. Plaintiffs further assert that **if** Ordinance 24-84 was not unlawful, it was officially adopted policy of the City which had plain and obvious consequences resulting in a constitutional violation. **[Dkt. 1, ¶141]**. However, Plaintiffs have not provided any evidence that the City was enforcing Ordinance 24-84 with deliberate indifference when it was superseded by state law and that the City adopted the now archaic law as its policy. On the contrary, in the March 26, 2018, phone call between Chief Valenciano and Grisham, Valenciano informed Grisham that the City followed state law and Open Carry is allowed in the City as long as no other laws are broken. **[Exhibit "B-1" YouTube Audio time stamp 1:44-2:00, 3:30-3:37, and 5:35-5:47]; [Exhibit "F" pp. 20:2-22, 115:6-13]**. Plaintiffs do not cite any specific instances where Ordinance 24-84 was enforced against them prior to March 27, 2018. Plaintiffs cannot assert vicarious constitutional claims on behalf of any other "Second Amendment activists." "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). The Fifth Circuit has emphasized that without all of the requisite elements

for a *Monell* claim to establish liability, "where a court fails to adhere to the rigorous requirements of culpability (by policymakers) and causation, municipal liability collapses into respondeat superior liability". *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of County Comm. of Bryan Cnty. V. Brown*, 520 U.S. 397, 415 (1997) (reference to policymakers added).  As such, Plaintiffs do not have a cause of action against the City of Olmos Park.

## XI.  NO WAIVER OF IMMUNITY FOR MALICIOUS PROSECUTION

46.      In Texas, tort claims brought against a governmental employee based on actions within the course and scope of employment must be dismissed.   Specifically, Texas Civil Practice and Remedies Code §101.106(f) states:

> "If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed."

*See* Tex. Civ. Prac. & Rem. C. §101.106(f). This provision, as well as others in §101.106, applies to all torts not just to those torts to which the state has waived sovereign immunity. *Franka v. Velasquez*, 332 S.W.3d 361, 381 (Tex. 2011).

47.      Plaintiffs' claim for malicious prosecution against the individual Defendants for conduct within the general scope of their employment must be dismissed pursuant to section 101.106(f). Plaintiffs cannot proceed with a malicious prosecution claim against the City, even if substituted under section 101.106 because the city is immune from intentional torts. *See,* Tex. Civ. Prac. & Rem. Code §101.057(2) (excluding waiver of immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort.")  Consequently, Defendants aver the malicious prosecution claim must be dismissed.

## XII.  CONCLUSION

48.     As shown on the videos, Grisham's tactics and methodology used in the March 27, 2018, incident in Olmos Park are inapposite to three of the four mission statements promulgated by Open Carry Texas[6]. Contrary to Plaintiffs' claim that Grisham is a "peaceful protester" **[Dkt. 35, p. 2, ¶1],** Grisham's own YouTube broadcasts provide an insight to his intentions and propensity for a violent confrontation[7].  The summary judgment evidence is clear that Grisham with the assistance of Everard created alarm in the Olmos Park community for the purpose of staging a confrontation with the police with complete disregard for public safety and the potential for a violent outcome. The Defendant officers are entitled to qualified immunity from Plaintiffs' baseless claims.

## XIII.  PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Defendants pray that their Motion for Summary Judgment be granted and that all of Plaintiffs' claims against them be dismissed. Alternatively, Defendants pray for such other and further relief to which they are justly entitled.

---

[6] "(1) Educate all Texans about their right to carry in the State of Texas; (2) Condition Texans to feel safe around law-abiding citizens that choose to carry; (4) Foster a cooperative relationship with local law enforcement in the furtherance of these goals with an eye towards preventing negative encounters, while defending our rights". **[Exhibit "B-8"].**

[7] ". . . but if you notice right before that happened in Olmos Park, I wasn't going to let him [Viera] arrest me. I'm telling you right now I would have fought him tooth and nail.  There would have been a fist fight and possibly a gun fight if I had not been tased, but I was not going to be falsely arrested.  I will never be falsely arrested anymore.  I will fight back". **[Exhibit "M" YouTube video clip time stamp 25:35 – 26:18].**

Signed this 5th day of November 2021.

Respectfully submitted,

Denton Navarro Rocha Bernal & Zech
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:     (210) 227-3243
Facsimile:      (210) 225-4481
pbernal@rampagelaw.com
aruiz@rampagelaw.com

BY:     */s/ Adolfo Ruiz*
PATRICK C. BERNAL
State Bar No. 02208750
ADOLFO RUIZ
State Bar No. 17385600
COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Federal Rules of Civil Procedure on this 5th day of November 2021, to the following

Brandon Grable                                          **E-NOTIFICATION**
Austin M. Reyna
Grable Grimshaw Mora PLLC
1603 Babcock Road, Suite 280
San Antonio, Texas 78229

*/s/ Adolfo Ruiz*
PATRICK C. BERNAL
ADOLFO RUIZ

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER GRISHAM, JAMES EVERARD,** | § | |
| | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| **vs.** | § | **Case No.: SA-20-CV-00387-OLG** |
| | § | |
| **RENE VALENCIANO, J. LOPEZ,** | § | |
| **HECTOR RUIZ, A. VERA, CITY OF** | § | |
| **OLMOS PARK** | § | |
| | § | |
| *Defendants.* | § | |

**ORDER ON DEFENDANTS' RENE VALENCIANO, J. LOPEZ,
HECTOR RUIZ, A. VERA, CITY OF OLMOS PARKMOTION
FOR SUMMARY JUDGMENT**

On this day the Court considered Defendants' Rene Valenciano, J. Lopez, Hector Ruiz, A. Vera, City of Olmos Park Motion for Summary Judgment. The Court, having considered the pleadings, finds that Defendants are entitled to qualified immunity from all claims asserted by Plaintiffs and Defendants' Motion should therefore be granted.

IT IS THEREFORE ORDERED that Defendants' Rene Valenciano, J. Lopez, Hector Ruiz, A. Vera, City of Olmos Park Motion for Summary Judgment is GRANTED. All of Plaintiffs' claims against Defendants are dismissed with prejudice.

SIGNED on this ___ day of _____, 2021.

_____
UNITED STATES DISTRICT JUDGE