

# United States Court of Appeals
## for the Fifth Circuit

Certified as a true copy and issued
as the mandate on Apr 01, 2024

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

No. 22-50915

United States Court of Appeals
Fifth Circuit
**FILED**
February 26, 2024

Lyle W. Cayce
Clerk

CHRISTOPHER GRISHAM; JAMES EVERARD,

*Plaintiffs—Appellants,*

versus

RENE VALENCIANO, *Olmos Park Chief of Police*; J. LOPEZ, *Officer*; HECTOR RUIZ, *Officer*; A. VIERA, *Officer*; CITY OF OLMOS PARK,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-387

---

Before STEWART, DENNIS, and WILSON, *Circuit Judges.*

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

Case 5:20-cv-00387-OLG   Document 129   Filed 04/01/24   Page 2 of 16
Case: 22-50915   Document: 95-1   Page: 2   Date Filed: 04/01/2024

No. 22-50915

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. *See* FED. R. APP. P. 41(b). The court may shorten or extend the time by order. *See* 5TH CIR. R. 41 I.O.P.

# United States Court of Appeals
# for the Fifth Circuit

No. 22-50915

United States Court of Appeals
Fifth Circuit
**FILED**
February 26, 2024
Lyle W. Cayce
Clerk

CHRISTOPHER GRISHAM; JAMES EVERARD,

*Plaintiffs—Appellants,*

versus

RENE VALENCIANO, *Olmos Park Chief of Police*; J. LOPEZ, *Officer*; HECTOR RUIZ, *Officer*; A. VIERA, *Officer*; CITY OF OLMOS PARK,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-387

---

Before STEWART, DENNIS, and WILSON, *Circuit Judges.*

CARL E. STEWART, *Circuit Judge*:

James Everard ("Everard") and Christopher Grisham ("Grisham") (collectively, "Plaintiffs") filed this civil rights suit under 42 U.S.C. § 1983 against the City of Olmos Park ("the City") and several police officers (collectively, "Defendants") alleging that their arrests were in violation of their constitutional rights. The district court granted summary judgment in favor of the City and the officers and dismissed Everard's and Grisham's claims. Because the record evidence supports the district court's summary judgment, we AFFIRM.

No. 22-50915

## I. Factual & Procedural Background[1]

Grisham and Everard are self-styled "Second Amendment protestors" who had been involved in several protests advocating for the repeal of a City ordinance that governs the unauthorized carrying of loaded firearms.[2] This case arises out of their arrests on March 27, 2018. Prior to this date, the Olmos Park Police Department had received calls from dispatch on numerous occasions and was aware of several Second Amendment demonstrations happening throughout the City.

On March 27, 2018, 911 operators received several calls regarding a man "with an AK-47" around his neck, standing on a busy street corner in Olmos Park for about five minutes.[3] Officers were dispatched to the scene to investigate, with the idea that they would encounter "those Second Amendment people again." Officer James Lopez arrived on the scene and

---

[1] We derive the factual background from the Report and Recommendation by the Magistrate Judge.

[2] Olmos Park, Ordinance ch. 24, art. IV., § 24-85 ("Ordinance").

[3] During the early afternoon of March 27, 2018, several alarmed passersby called 911. One caller reported that a man with an "AK-47 around his neck" was occupying a crowded public area in the City across the street from a busy Shell gas station. Another caller reported that a man with a gun was walking along a busy street in a high traffic location in the City. The callers described the man as wearing all black, displaying a gun strapped around his neck, and interacting with passing motorists for several minutes. The callers used the 911 emergency system to contemporaneously report the man's suspicious behavior, which they believed involved either an emergency or immediate threat to safety and thus required immediate action. *See Navarette v. California*, 572 U.S. 393, 399–400 (2014) (holding that a motorist's 911 emergency call provided reasonable suspicion of an ongoing crime). The 911 dispatcher considered the callers and the information they conveyed to be credible and dispatched officers to the scene. The dispatcher also relayed to the officers that 'it looks like it's going to be the Second Amendment People.'" Concluding that there was an emergency, officers arrived shortly after the calls and encountered a large man, consistent with the 911 calls, wearing dark clothing and displaying an assault-like rifle.

No. 22-50915

encountered Everard standing on a street corner with a large gun in a holster in front of his chest. Consistent with the 911 calls, the street corner that Everard occupied was a high traffic location, busy with both pedestrian and vehicle traffic, and Everard was a large man wearing dark clothing and displaying an assault-like rifle. Moreover, Everard was openly and verbally uncooperative, challenging the officers' commands and refusing to comply with their orders. Officer Lopez repeatedly told Everard to get on the ground, but Everard did not comply. Next, Officer Adrian Viera arrived on the scene and continued verbal negotiations with Everard. Grisham then approached Everard with a handgun in a holster on his hip and began filming the interaction with the officers. The officers instructed Grisham to "get away from Everard," but he did not comply and continued to stand near him.

Chief Rene Valenciano arrived on the scene and approached Grisham and Everard, with one hand on his taser. Chief Valenciano told Everard to get on the ground; again, Everard refused to comply. Officer Viera once again instructed Grisham to get away from Everard, which Grisham refused to do. Officer Viera then approached Grisham with handcuffs and reached for his hands, but Grisham backed away several feet, pulled his hands away, and continued to retreat from the officer. As Grisham turned away—backing up in the direction of Everard and continuing to pull away from Officer Viera— Chief Valenciano approached Grisham from behind and tased him, causing Grisham to fall backwards and hit his head on the pavement.

Officer Hector Ruiz approached Everard, and Everard put his hands behind his back to be handcuffed. Officer Ruiz walked Everard a few steps away from the road and, with one hand on his arm and another on his upper back, directed him to kneel in a slow and controlled manner. Officer Ruiz and Chief Valenciano both grasped Everard's arms and moved him from his knees to a prone (lying flat on his stomach) position. The officers turned Grisham over on his stomach, placed him in handcuffs, and searched him.

No. 22-50915

Everard was charged with disorderly conduct for displaying a firearm in a manner causing alarm, and Grisham was charged with interference with the duties of a public servant. All charges were dismissed for insufficient evidence.

Based on the above incident, Everard and Grisham filed suit under 42 U.S.C. § 1983 alleging violations of their First, Fourth, and Fourteenth Amendment rights. Plaintiffs and Defendants filed cross- motions for summary judgment. The district court referred the matter to the magistrate judge, who adjudicated the parties' competing motions and issued a report and recommendation to the district court. The district court considered and adopted the recommended order, granting Defendants' motion for summary judgment on Plaintiffs' (1) Fourth Amendment claims for excessive force, unlawful arrest, and unlawful search and seizure; (2) First Amendment claims for prevention of protected conduct and retaliation for protected conduct; (3) Fourteenth Amendment claims for deprivation of property and failure to provide medical care; (4) failure to intervene claims; (5) malicious prosecution claims; and (6) municipal liability claims. Everard and Grisham appealed.

## II. Standard of Review

We conduct a *de novo* review of a district court's grant of summary judgment. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing Fed. R. Civ. P. 56(a)). However, "[a] qualified immunity defense alters the usual summary judgment burden of proof" because, to overcome qualified immunity, Plaintiffs "must rebut the defense by establishing a genuine [dispute of material fact] as to whether the official's allegedly wrongful conduct violated clearly established law." *Bey v. Prator*, 53

F.4th 854, 857 (5th Cir. 2022) (per curiam) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)) (alteration in original).

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A panel may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks and citation omitted). Although we view the evidence favorably to the nonmovant, we nevertheless "assign greater weight, even at the summary judgment stage, to the video recording taken at the scene." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (internal punctuation omitted) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)); *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("The Court of Appeals should not have relied on [the respondent's version of events]; it should have viewed the facts in the light depicted by the videotape."). "[T]he ultimate determination of whether there is probable cause for the arrest is a question of law [this court] review[s] de novo." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc).

## III. Discussion

As an initial matter, we note that Plaintiffs do not challenge the district court's holding as to their claims regarding unlawful search, failure to intervene, deprivation of property, failure to provide medical care, or malicious prosecution. Accordingly, the issues are forfeited on appeal. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal."). Plaintiffs instead focus on the district court's grant of summary judgment as to (1) their First Amendment claims, (2) their Fourth Amendment claims,

Case 5:20-cv-00387-OLG   Document 129   Filed 04/01/24   Page 8 of 16
Case: 22-50915   Document: 95-2   Page: 6   Date Filed: 04/01/2024

No. 22-50915

and (3) the City's liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The record in this case includes videotape exhibits capturing the events in question. As discussed, this court must "vie[w] the facts in the light depicted by the videotape" that captured the events underlying Plaintiffs' claims. *Scott*, 550 U.S. at 381; *see also Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015) ("*Scott* instructs that a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings."). Thus, in viewing the facts in the light depicted by the videotape, as *Scott v. Harris* directs, we agree that the magistrate judge did not err in his recounting of the facts. *See* 550 U.S. at 381. All the material facts as described by the magistrate judge—from the arrival of responding officers to the subsequent arrests of Everard and Grisham—were supported by the video record.

Accordingly, in the qualified immunity context, the magistrate judge did not err in concluding that there were no genuine disputes of material fact underlying the determination that (1) the officers had probable cause to believe that Plaintiffs were engaging in criminal activity and (2) the officers were not objectively unreasonable in believing such probable cause existed. *See Bey*, 53 F.4th at 858 (internal quotation marks omitted). "It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause." *Castro*, 166 F.3d at 733. "Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (internal quotation marks and citation omitted).

Case: 5:20-cv-00387-OLG   Document 129   Filed 04/01/24   Page 9 of 16
Case: 22-50915   Document: 95-2   Page: 7   Date Filed: 04/01/2024

No. 22-50915

"The qualified immunity inquiry includes two parts": (1) "whether the officer's alleged conduct has violated a federal right" and (2) "whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). To determine clearly established law we look to cases decided at the "at the time of the violation." *See Henderson v. Harris Cnty.*, 51 F.4th 125, 133 (5th Cir. 2022) (quoting *Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022)). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)).

### A. Unlawful, Retaliatory Arrests

Neither this court nor the Supreme Court has held that officers cannot execute their law enforcement duties while someone is engaging in speech, where probable cause exists. Rather, officers cannot execute their law enforcement duties to search and seize in retaliation of speech or as imposed censorship. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities.").

Plaintiffs argue that Defendants "retaliated against them for peacefully exercising their First Amendment right to protest the Ordinance." A retaliatory arrest claim requires that (1) Plaintiffs were engaged in constitutionally protected activity, (2) Defendants caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendants' adverse actions were

Case 5:20-cv-00387-OLG   Document 129   Filed 04/01/24   Page 10 of 16
Case: 22-50915   Document: 95-2   Page: 8   Date Filed: 04/01/2024

No. 22-50915

substantially motivated by the Plaintiffs' exercise of constitutionally protected conduct. *Keenan*, 290 F.3d at 258. The magistrate judge recognized that Plaintiffs met prong one by establishing a "constitutionally protected activity: filming the Defendant officers" and that "filming police officers engaged in their professional duties has been a clearly established right in the Fifth Circuit since 2017[.]"

Still, a retaliatory criminal prosecution "in violation of the First Amendment [is] actionable only if a plaintiff can also prove . . . absence of probable cause to prosecute." *Keenan*, 290 F.3d at 260. Additionally, in *Nieves v. Bartlett*, the Supreme Court emphasized that a "plaintiff pressing a retaliatory arrest claim" based on speech protected by the First Amendment generally "must plead and prove the absence of probable cause for the arrest." 139 S. Ct. 1715, 1724 (2019). Moreover, the *Nieves* Court established that plaintiffs in retaliatory prosecution cases must "show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause." *Id.* at 1723.

Here, as in *Nieves*, the officers had probable cause to make the arrests for disorderly conduct and resisting arrest, thus precluding the arrestees' retaliatory arrest claims. Still, on appeal, Plaintiffs argue that "probable cause does not foreclose this lawsuit since Grisham and Everard were treated differently from others because of their First Amendment activities." Notably, the *Nieves* Court did delineate a carveout to the probable cause prerequisite in holding that a plaintiff asserting a retaliatory arrest claim does not have to establish the absence of probable cause "when [the] plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1727. Plaintiffs contend that other armed protestors were not arrested because the officers personally opposed "the message that Everard

Case 5:20-cv-00387-OLG  Document 129  Filed 04/01/24  Page 11 of 16
Case: 22-50915  Document: 95-2  Page: 9  Date Filed: 04/01/2024

No. 22-50915

and Grisham conveyed." However, as the magistrate judge noted, other protestors were arrested, but they simply did not join in this lawsuit. Further, caselaw does not require that the officers seize all "otherwise similarly situated individuals." *Id.* Rather, "where officers have probable cause to make arrests" they may not disproportionately or unfairly "exercise their discretion not to do so." *Id.* The "no-probable-cause requirement" applies in the instant case because Plaintiffs have not presented objective evidence, beyond conclusory statements, that they were arrested "when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* Consequently, the officers are entitled to qualified immunity because there was probable cause to arrest Everard and Grisham pursuant to a presumptively constitutional and enforceable statute.[4] *See Michigan v. DeFellippo*, 443 U.S. 31, 37 (1979). And, as the record reflects, the officers were objectively reasonable in believing that such probable cause existed. *See Westfall v. Luna*, 903 F.3d 534, 550 (5th Cir. 2018) (granting qualified immunity when the record failed to show that the police officer's actions were motivated by the plaintiff's speech rather than her conduct of reaching for a doorknob against officers' instructions).

Whether probable cause exists is based on what an objectively reasonable officer would perceive under the totality of circumstances. *See District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (reaffirming that probable cause is based on an objective totality of the circumstances test); *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) ("Although the probable cause inquiry is an objective one, it must nevertheless be conducted in light

---

[4] A Texas Court of Appeals has evaluated the relevant disorderly conduct statute under which Everard was arrested, holding that Texas Penal Code § 42.01(a) is neither unconstitutionally vague nor unconstitutionally overbroad. *Ex parte Poe*, 491 S.W.3d 348, 355 (Tex. App.—Beaumont 2016) ("The statute's plainly legitimate sweep bears a rational relationship to the State's interest in public safety and welfare.").

Case: 5:20-cv-00387-OLG   Document 129   Filed 04/01/24   Page 12 of 16
Case: 22-50915   Document: 95-2   Page: 10   Date Filed: 04/01/2024

No. 22-50915

of the actual facts known to the officer at the time of the arrest."). The offense of disorderly conduct under Texas Penal Code § 42.01(a) necessitates displaying a firearm (or other deadly weapon), intentionally or knowingly, and in a manner calculated to alarm. At the time of the incident, the text of the Texas statutes governing disorderly conduct and interference with public duties and Texas state caselaw interpreting the relevant statutes supported that there was probable cause to arrest Everard and Grisham. *See Ex parte Poe*, 491 S.W.3d at 355 ("We conclude that although there clearly are constitutional rights to bear arms and to express oneself freely, there is no constitutionally protected right to display a firearm in a public place *in a manner that is calculated to alarm*. . . . [§ 42.01(a)(8)'s] plainly legitimate sweep bears a rational relationship to the State's interest in public safety and welfare."); *see also Lovett v. State*, 523 S.W.3d 342, 347 (Tex. App.—Fort Worth 2017) ("[T]he mere presence of a firearm or deadly weapon in public cannot [] supply the requisite *mens rea* for a disorderly-conduct conviction.").

Although Plaintiffs maintain that their objective on March 27, 2018 was to educate the public, not to alarm it, the magistrate judge held that, considering the totality of circumstances, the officers made an entirely reasonable inference that probable cause existed to effectuate their lawful arrests. Moreover, the Supreme Court has articulated that, to determine whether there was probable cause to arrest, the reviewing court should ask "whether a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a substantial chance of criminal activity." *Wesby*, 583 U.S. at 61 (internal quotation marks omitted). Here, Plaintiffs' purported innocent explanations do not negate the officers' probable cause for executing their arrests. *See Loftin v. City of Prentiss*, 33 F.4th 774, 781 (5th Cir. 2022) (citing *Wesby*, 583 U.S. 61).

Case 5:20-cv-00387-OLG   Document 129   Filed 04/01/24   Page 13 of 16
Case: 22-50915   Document: 95-2   Page: 11   Date Filed: 04/01/2024

No. 22-50915

The relevant facts and circumstances here were sufficient for a reasonable officer to believe that Everard acted with the requisite specific intent to cause sustained fear or serious public disruption by displaying a firearm in a manner calculated to alarm and that Grisham's continued approach towards Everard and officers, while being instructed to retreat, amounted to interference. Believing that immediate police action was necessary, several alarmed passersby used the 911 emergency system to contemporaneously report Everard's suspicious behavior. The 911 emergency calls provided officers with the reasonable belief that either an emergency or immediate threat to safety was underway. *See Navarette*, 572 U.S. at 399–400 (holding that a motorist's 911 emergency call provided reasonable suspicion of an ongoing crime). When officers arrived on the scene, Everard was standing in a crowded public area with his gun in a holster across his chest, which alarmed passersby enough to call 911. While displaying his assault-like rifle and standing prominently in the center of a very busy pedestrian and vehicle traffic area, Everard was also openly and verbally uncooperative with officers, challenging their commands and refusing to comply with their orders.

Moreover, the officers were aware that the disorderly conduct statute was constitutional and that Texas courts have held that while "there clearly are constitutional rights to bear arms and to express oneself freely, there is no constitutionally protected right to display a firearm in a public place in a manner that is calculated to alarm." *See Ex parte Poe*, 491 S.W.3d at 355. Construing all factual disputes in the light depicted by the videotape record, probable cause principles dictate that Plaintiffs' arrests were lawful. *See Scott*, 550 U.S. at 381. Accordingly, the officers are protected by qualified immunity since (1) Everard can point to no clearly established law that a reasonable officer would not have probable cause to arrest an armed, noncompliant protestor under Texas Penal Code § 42.01(a), and (2) Grisham can point to

Case 5:20-cv-00387-OLG Document 129 Filed 04/01/24 Page 14 of 16
Case: 22-50915 Document: 95-2 Page: 12 Date Filed: 04/01/2024

No. 22-50915

no clearly established law that a reasonable officer would not have probable cause to arrest an armed, noncompliant, interfering protestor under Texas Penal Code § 38.15(a). Summary judgment was properly granted on Plaintiffs' Fourth Amendment unlawful arrest claims and First Amendment prevention of protected conduct and retaliation for protected conduct claims. *See Bey*, 53 F.4th at 857.

### B. Excessive Force

Likewise, the video evidence does not support Everard's claims of excessive force. Instead, a review of the video evidence reveals that he was not pushed or shoved forcefully but placed on the ground in a nonviolent manner. As discussed, Everard complied with the officers as they handcuffed him. Officers then walked Everard a few steps away, helped him onto his knees in a manner that was slow and controlled, and moved him from his knees to a prone position to effectuate a thorough search for additional weapons.

In contrast, the force at issue in Grisham's excessive force claim is Chief Valenciano's use of a taser. Grisham argues that the tasing constituted excessive force because the crimes he was arrested for were not severe, he was not an immediate safety threat, and he was not resisting arrest or attempting to flee. A review of the video evidence, however, shows that this recollection is inaccurate.

Determining whether the force used to carry out an arrest is reasonable requires a fact intensive inquiry that turns on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darden v. City of Fort Worth*, 880 F.3d 722, 729 (5th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The magistrate judge

Case 5:20-cv-00387-OLG Document 129 Filed 04/01/24 Page 15 of 16
Case: 22-50915 Document: 95-2 Page: 13 Date Filed: 04/01/2024

No. 22-50915

determined that Grisham did not put his hands behind his back when ordered but instead kept them within reach of his handgun. Given these circumstances, it was not unreasonable for Chief Valenciano to believe—at the time he deployed the taser—that Grisham was both a safety threat and resisting arrest. The officers are entitled to qualified immunity because neither Everard nor Grisham can point to any clearly established law that such force was unreasonably excessive under the circumstances. Summary judgment was properly granted on Plaintiffs' Fourth Amendment excessive force claims. *See Bey*, 53 F.4th at 857.

### C. Municipal Liability

As a final matter, we also hold that summary judgment was properly granted on Plaintiffs' municipal liability claims. To recover a judgment against a city under § 1983, a plaintiff must allege and establish that he sustained a deprivation of a constitutional or other federally protected right because of some official policy, practice, or custom of that governmental entity. *Monell*, 436 U.S. at 691-94. "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy . . . ." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Plaintiffs allege that the City ratified Chief Valenciano's policy to "Squash the Rebel" by failing to curtail the retaliatory arrests. Plaintiffs argue that City Council members and other policymakers were deliberately indifferent to the retaliatory arrests because they received "a lot of emails from second amendment activists regarding the City's unconstitutional ordinance" and thus "were well-aware of the Olmos Park Police Department's violation of activists' constitutional rights." But, as the magistrate judge correctly held, Plaintiffs failed to establish that there were

No. 22-50915

constitutional violations vis-a-vis the arrests in question; thus, the City is not liable. *See Piotrowski*, 237 F.3d at 578.

## IV. CONCLUSION

For the foregoing reasons, the district court's summary judgment is AFFIRMED.